GARY M. RESTAINO
United States Attorney
District of Arizona
ADDISON SANTOME
Assistant U.S. Attorney
Arizona State Bar No. 031263
40 N. Central Avenue Ste. 1800
Phoenix, AZ 85004
Telephone: 602-514-7599
Email: Addison.Santome@gmail.com
Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| United States of America, | CR-22-00318-001-PHX-DGC |
|---|---|
| Plaintiff, | **GOVERNMENT'S MEMORANDUM OPPOSING DEFENDANT'S PRE-SENTENCING RELEASE** |
| vs. | |
| Omar Molina-Galeana, | |
| Defendant. | |

The United States of America, by and through undersigned counsel, hereby submits this Memorandum Opposing the Defendant's Pre-Sentence Release. This Memorandum is based on the facts and law set forth in the attached Memorandum of Points and Authorities.

Respectfully submitted this 26th of July, 2023.

                GARY M. RESTAINO
                United States Attorney
                District of Arizona

                *s/Addison Santome*
                Addison Santome
                Assistant U.S. Attorney

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.     FACTS AND PROCEDURAL HISTORY.**

On December 7, 2021, Jones & Jones, a Federal Firearms Licensee (FFL) in Yuma, Arizona contacted the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) regarding concerns they had about recent purchases made by Ernesto Javier Lizarraga (Defendant 2 in this indictment). According to Jones & Jones, Lizarraga had been coming in regularly purchasing multiple AK47's and Glock pistols in cash.

On December 14, 2021, Jones & Jones contacted ATF to advise that Lizarraga had purchased a firearm on December 11, 2021, and was in their store again that day (December 14, 2021). Agents arrived at Jones and Jones and observed Lizarraga enter a vehicle. They followed the vehicle to OMAR MOLINA-GALEANA's (Defendant) residence.

Once at this location, the vehicle parked in the driveway. The agents parked on the side of the residence in a dirt area to observe Lizarraga's actions. Lizarraga exited the vehicle and proceeded towards the residence. Then, agents saw Defendant exited a side gate to meet Lizarraga. Agents approached Lizarraga and Defendant. Lizarraga told the agents he just purchased a firearm, and it was in the trunk of his vehicle. Defendant came towards the agents and asked why they were there. Agents told Defendant they were there to speak with Lizarraga.

Lizarraga told agents he was at this residence to visit his friend, Defendant. When pressed about the other firearm purchases, Lizarraga eventually admitted the firearm he purchased that day and the previously purchased firearms were all for Defendant. Lizarraga showed agents Snapchat and text messages between him and Defendant regarding the purchases of firearms.

Agents contacted Defendant and read him his *Miranda* Rights. Defendant denied he asked Lizarraga to purchase those firearms, but admitted it was his phone number. Agents directed Lizarraga and Defendant to cease the illegal firearms activity.

In approximately March 2022, ATF agents were at Jones & Jones collecting firearm

transaction paperwork on an unrelated case. At that time, Defendant and another individual entered Jones and Jones. Upon seeing ATF agents, Defendant exited and did not return. The other individual left shortly after and did not make any purchases.

On April 1, 2022, ATF agents pulled into the parking lot of Jones & Jones in anticipation of retrieving paperwork for an unrelated case. Upon arrival, they observed Richard Montijo (Defendant 4) waiting outside the store, with two rifle boxes in his possession. The agent contacted Jones & Jones employees and learned that Montijo had just purchased two (2) rifles. The agent then observed the Montijo walk a short distance from the parking lot and enter a vehicle which had been observed by law enforcement at the Defendant's residence earlier that day. The agent followed the vehicle, and a local Yuma police officer conducted a traffic stop.

The driver, Jesus Guerrero (Defendant 3), admitted to the agent that he was driving Montijo to Jones & Jones, in order to purchase firearms for Defendant. Guerrero explained to the agent that he had been recruited by Defendant to purchase firearms and subsequently recruited Montijo and the additional passenger in the vehicle, Israel Francisco Lopez (Defendant 5). Guerrero consented to a search of his phone, the contents of which support Guerrero's statements that Montijo was purchasing the firearm for Defendant.

On April 12, 2022, an indictment was filed in the United States District Court, District of Arizona, charging Defendant with a violation of 18 United States Code (U.S.C.) Section 371, Conspiracy, for his involvement in the firearms offenses related to Lizarraga's transactions. (Doc. 1).

On April 19, 2022, ATF executed a federal search warrant at Defendant's residence. Prior to the execution of the warrant, agents had the occupants – Defendant and Naschly Chiquete – exit the residence. Defendant stated Chiquete is his girlfriend and pregnant with his child. (ATF ROI 20). Defendant admitted to being unemployed but selling vehicles on the side. (ATF ROI 20). Agents found several firearm locks in a burn pit, multiple magazines, and some paperwork related to a firearm purchase made by Issac Guerrero (Defendant 8). (ATF ROI 20) Defendant was arrested. (Doc. 21).

1    On April 20, 2022, in anticipation of Defendant's initial appearance, Pretrial Services completed their Bail Report (Doc. 8). In the report, they mentioned Defendant was in a romantic relationship with Emily Estrada, who reported she was four weeks pregnant with his child. (Doc. 8). Yanneri Galeana (Defendant's Mother) and Omar Molina-Flores (Defendant's Father) were interviewed by Pretrial Services. (Doc. 8). Galeana did not wish to serve as Defendant's third-party custodian. (Doc. 8) Molina-Flores was willing to serve as third-party custodian. (Doc. 8) Despite being previously imprisoned for Transportation of Marijuana, Pretrial Services found him to be an appropriate third-party custodian. (Doc. 8)

Also in the report, Defendant claimed to be selling vehicles and working for his uncle moving merchandise to the swap meet (Doc 8). During the government's investigation, they did not find any evidence substantiating this employment.

On April 25, 2022, while Defendant was still in custody, he contacted Molina-Flores over a recorded line. During the conversation, Defendant directed Molina-Flores to tell his mother to contact "Pepe" and have him vouch that he was working for him moving merchandise to the swap meet.

On May 4, 2022, U.S. Magistrate Judge John Z. Boyle released Defendant to Molina-Flores as third-party custodian. (Doc 19.).

On May 13, 2022, Pretrial services filed a report highlighting concerns about mental health and substance abuse care. (Doc 22). Defendant agreed to participate in mental health treatment. (Doc. 22).

On July 11, 2022, Pretrial services filed an abbreviated report after Defendant provided a diluted urine test which tested positive for marijuana. (Doc 29). Pretrial Services counseled the Defendant. (Doc. 29). The Defendant had been difficult to contact and been late for several appointments. (Doc. 29). Additionally, he had missed an appointment after being arrested on a warrant for a traffic violation. (Doc. 29). Pretrial confirmed that Defendant has paid fines in two outstanding traffic violations. (Doc. 29).

On August 19, 2022, Pretrial Services filed another report because Defendant failed to provide proof of employment, failed to appear for testing, tested positive for Marijuana, and failed to participate in his mental health treatment. (Doc. 34).

On September 2, 2022, Estrada (One of Defendant's Romantic Partners) was contacted by Border Patrol. Estrada was found to be smuggling three undocumented aliens. She admitted to transporting these individuals pursuant to instructions by "T". An extraction of her phone revealed that Defendant after being blocked since July 7, 2022, was unblocked, and contacted her the morning of September 2, 2022. He stated "con cuidadooo", which translates to "be careful". They exchanged a couple messages and ultimately Defendant called her multiple times during her contacted by Border Patrol. Several of the messages sent by Defendant had been deleted.

On September 14, 2022, Defendant was arrested for his Pretrial Violations. Defendant requested to be evaluated for Crossroads. Although he was found suitable, U.S. Magistrate Michelle H. Burns found detention to be more appropriate. (Doc 41.).

On October 25, 2022, a superseding indictment was filed in the United States District Court, District of Arizona, indicted Defendant and an additional nine co-defendants for 18 U.S.C. Section 371, Conspiracy, for firearms trafficking activity that occurred between November 3, 2021, and April 19, 2022[1]. Specifically, Defendant, assisted by Jesus Guerrero (Defendant 3), recruited nine people to purchase forty-nine firearms for Defendant. These firearms would then be provided to Defendant who would orchestrate their transport to Mexico. To date, thirteen of the forty-nine firearms have been recovered in Mexico in various criminal investigation – including assaults against Mexican authorities.

In addition, on February 25, 2023, the Mexican Military and Mexican National Guard recovered a firearm purchased by Chiquete (One of Defendant's Romantic Partners)

---

[1] Co-Defendants 2 – 11 were also charged with violations related to false statements made during the purchase of the firearms obtained as part of the conspiracy.

in San Luis Rio Colorado, Mexico after the suspect ran away dropping the firearm and three magazines. (ATF ROI 72).

On June 13, 2023, Defendant pleaded guilty to Conspiracy. The plea included the below factual basis. (Doc. 234):

>Between on or about November 3, 2021, and April 14, 2022, Defendant OMAR MOLINA-GALEANA and co-defendant Jesus Guerrero knowingly induced and procured co-defendants Ernesto Javier Lizarraga, Richard Montijo, Israel Francisco Lopez, Ianira Gonzalez, Kai San Diego, Issac Allen Guerrero, Israel De La Vega, Samuel Ledezma Castillo, and Joslyne Maria Lopez to make false statements and representations regarding the actual buyer/purchaser of the firearm(s) to businesses located in the District of Arizona and licensed under the provisions of Chapter 44 of Title 18, United States Code, with respect to information required by the provisions of Chapter 44 of Title 18, United States Code, to be kept in the records of that business.

>On eight (8) separate occasions during the procurement of a total of eight (8) firearms, co-defendant Ernesto Javier Lizarraga completed a Department of Justice, Bureau of Alcohol, Tobacco, Firearms and Explosives Form 4473, Firearms Transaction Record, indicating he was the true buyer/purchaser, when Defendant OMAR MOLINA-GALEANA was the actual buyer and intended recipient of the firearms.

>On one (1) occasion during the procurement of a total of two (2) firearms, co-defendant Richard Montijo completed a Department of Justice, Bureau of Alcohol, Tobacco, Firearms and Explosives Form 4473, Firearms Transaction Record, indicating he was the true buyer/purchaser, when Defendant OMAR MOLINA-GALEANA was the actual buyer and intended recipient of the firearms.

>On two (2) separate occasions during the procurement of a total of two (2) firearms, co-defendant Israel Francisco Lopez completed a Department of Justice, Bureau of Alcohol, Tobacco, Firearms and Explosives Form 4473, Firearms

Transaction Record, indicating he was the true buyer/purchaser, when Defendant OMAR MOLINA-GALEANA was the actual buyer and intended recipient of the firearms.

On two (2) separate occasions during the procurement of a total of two (2) firearms, co-defendant Ianira Gonzalez completed a Department of Justice, Bureau of Alcohol, Tobacco, Firearms and Explosives Form 4473, Firearms Transaction Record, indicating he was the true buyer/purchaser, when Defendant OMAR MOLINA-GALEANA was the actual buyer and intended recipient of the firearms.

On ten (10) separate occasions during the procurement of a total of ten (10) firearms, co-defendant Kai San Diego completed a Department of Justice, Bureau of Alcohol, Tobacco, Firearms and Explosives Form 4473, Firearms Transaction Record, indicating he was the true buyer/purchaser, when Defendant OMAR MOLINA-GALEANA was the actual buyer and intended recipient of the firearms.

On eleven (11) separate occasions during the procurement of a total of ten (10) firearms, co-defendant Issac Allen Guerrero completed a Department of Justice, Bureau of Alcohol, Tobacco, Firearms and Explosives Form 4473, Firearms Transaction Record, indicating he was the true buyer/purchaser, when Defendant OMAR MOLINA-GALEANA was the actual buyer and intended recipient of the firearms.

On three (3) separate occasions during the procurement of a total of three (3) firearms, co-defendant Israel De La Vega completed a Department of Justice, Bureau of Alcohol, Tobacco, Firearms and Explosives Form 4473, Firearms Transaction Record, indicating he was the true buyer/purchaser, when Defendant OMAR MOLINA-GALEANA was the actual buyer and intended recipient of the firearms.

On five (5) separate occasions during the procurement of a total of five (5) firearms, co-defendant Samuel Ledezma Castillo completed a Department of Justice, Bureau of Alcohol, Tobacco, Firearms and Explosives Form 4473, Firearms

Transaction Record, indicating he was the true buyer/purchaser, when Defendant OMAR MOLINA-GALEANA was the actual buyer and intended recipient of the firearms.

On six (6) separate occasions during the procurement of a total of five (5) firearms, co-defendant Joslyne Marie Lopez completed a Department of Justice, Bureau of Alcohol, Tobacco, Firearms and Explosives Form 4473, Firearms Transaction Record, indicating he was the true buyer/purchaser, when Defendant OMAR MOLINA-GALEANA was the actual buyer and intended recipient of the firearms.

At Defendant OMAR MOLINA-GALEANA's direction and co-defendant Jesus Guerrero's supervision, co-defendants Ernesto Javier Lizarraga, Richard Montijo, Israel Francisco Lopez, Ianira Gonzalez, Kai San Diego, Issac Allen Guerrero, Israel De La Vega, Samuel Ledezma Castillo, and Joslyne Maria Lopez provided all firearms to Defendant OMAR MOLINA-GALEANA.

## II.  LAW AND FACTORS TO BE CONSIDERED.

Title 18, U.S.C., Section 3143, addresses the detention of defendants pending sentencing. In relevant part, the statute states that "the judicial officer shall order that a person who has been found guilty of an offense and who is awaiting imposition or execution of sentence, other than a person for whom the applicable guideline promulgated pursuant to 28 U.S.C. 994 does not recommend a term of imprisonment, be detained, unless the judicial officer finds by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released under section 3142(b) or (c)." The United States will be seeking a term of imprisonment at sentencing, and estimates Defendant's guidelines to be in the range of 46 – 57 months[2].

---

[2] At this time, Defendant's Presentence Report is not available. This is an estimate which has previously been discussed by the parties. There are no agreements as to the specific range.

A judicial officer shall, in determining whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community, take into account the available information concerning several factors. 18 U.S.C. 3142(g). These factors, as they pertain to the Defendant, are analyzed below.

### A. The nature and circumstances of the offense charged.

Defendant is the leader/organizer of a multi-defendant firearm trafficking conspiracy which transported at least forty-nine firearms to Mexico. To date, thirteen of the firearms have been recovered in Mexico. Defendant appears to have strong ties to be trusted with the money and transport of so many firearms. Further, this conduct perpetuates a cycle of violence that has threatened stability in Mexico and the United States for years, as well as strained cross-border traffic and relations between Mexico and the United States.

### B. The weight of the evidence against the defendant.

Defendant has pleaded guilty and admitted to the factual basis contained in his plea agreement provided above.

### C. The defendant's history and characteristics.

During the pendency of this case, Defendant has failed to follow the law and orders of this court. First, in December 2021, after contact with ATF agents, he continued to recruit and have straw purchasers obtain firearms on his behalf. Approximately thirty-one of the forty-nine firearms were obtained in January 2022 or later (after the warning from the ATF agent). Second, while on release in this case, he has failed to follow his term of release – despite being released to a third-party custodian (his father – Molina-Flores) and being fully aware that at least two of his romantic partners were pregnant with his child. Even after receiving counseling from his Pretrial Services Officer on at least two occasions, and receiving a pre-violation warning, he still disregarded the terms of his release. His actions demonstrated a complete disregard for his father, as his third-party custodian, and his future children.

**D. The nature and seriousness of the danger to any person or the community that would be posed by the person's release.**

As detailed above, Defendant's actions directly affected the cycle of violence in Mexico. He armed individuals who would seek to harm Mexican authorities.

In addition, at this time, Defendant has received all discovery which outlines the evidence and witnesses to his actions, including co-Defendant statements. Although he has resolved his case by plea agreement, the Defendant may feel resentment towards his co-defendant's that have admitted to their actions in their own cases. The Defendant's ability to recruit and obtain firearms presents a risk for future danger – even if Defendant himself cannot buy the firearms himself. The United States still feels he could retaliate against those mentioned in the reports.

### III.   RISK OF NON-APPEARANCE AND DANGER TO THE COMMUNITY.

**A. The defendant is a risk of non-appearance.**

The Defendant's connections to Mexico, two outstanding warrants (Doc. 309), prior failure to follow the Court's release conditions, failure to participate in treatment, and multiple positive drug tests highlight his risk of non-appearance.

**B. The defendant poses a danger to the safety of the community.**

The inherent danger in orchestrating firearms trafficking to Mexico is strong evidence of the threat to the safety of the community posed by the Defendant.  There is also justifiable concern to believe that the defendant will continue to engage in illegal activity if released, based upon his prior disregard for the law.

//

//

## IV. CONCLUSION.

Because the Defendant poses a risk of danger and non-appearance, to which there is not clear and convincing evidence to the contrary, he should be detain pending sentencing.

Respectfully submitted this 26th day of July, 2023.

GARY M. RESTAINO
United States Attorney
District of Arizona

_____
ADDISON SANTOME
Assistant U.S. Attorney

**CERTIFICATE OF SERVICE**

I hereby certify that on July 26, 2023, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing a copy to the following CM/ECF registrant:

Braulio Sebastian Sanchez, *Counsel for Omar Molina-Galeana*

*Addison Santome*
U.S. Attorney's Office